**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **RHAPSODY SOLUTIONS LLC** | § | |
| | § | |
| **Plaintiff,** | § | **CIVIL ACTION NO. 4:12-cv-1168** |
| | § | |
| **v.** | § | |
| | § | |
| **CRYOGENIC VESSEL ALTERNATIVES, INC.,** | § | |
| | § | |
| **CHRIS CARR, Individually** | § | |
| | § | |
| **DEAN CORBIN, Individually** | § | |
| | § | |
| **HECTOR VILLAREAL, Individually** | § | |
| | § | |
| **INOX INDIA LIMITED, and** | § | |
| | § | |
| **DOES 1-10** | § | |
| | § | |
| **Defendants.** | § | |

## ORIGINAL COMPLAINT

Plaintiff, Rhapsody Solutions LLC ("Plaintiff" or "Rhapsody") files this Original Complaint for injunctive relief and damages against Defendants Cryogenic Vessel Alternatives, Inc. ("CVA"), Chris Carr, Dean Corbin, Hector Villareal, INOX India Limited ("INOX"), and Does 1–10 ("Does 1–10") (collectively "Defendants") for acts of copyright infringement, inducement of copyright infringement, violations of the Digital Millennium Copyright Act, violations of the Lanham Act, Texas state claims for breach of contract, and common law claims of unfair competition, quantum meruit, and unjust enrichment alleging as follows:

## NATURE AND STATUTORY BASES OF ACTIONS

1.      Plaintiff brings this action under the Copyright laws of the United States, 17 U.S.C. § 501, *et seq*. and the Digital Millennium Copyright Act 17 U.S.C. § 1201 et seq. Further, this action is based on Texas state and common law claims all of which are so related to Plaintiff's claims of federal copyright infringement that they form part of the same case or controversy.

## PARTIES

2.      Plaintiff Rhapsody Solutions LLC is a limited liability company organized and existing under the laws of the State of Texas.  Rhapsody maintains its principal place of business in this judicial district at 2600 South Shore Blvd., Suite 300, League City, Texas 77573.

3.      Upon information and belief, Defendant Cryogenic Vessel Alternatives, Inc. is a corporation existing under the laws of the State of Texas.  Defendant may be served with process by serving its registered agent, Mr. Chris Carr, at 9528 Warren Road, Mont Belvieu, Texas 77580.

4.      Upon information and belief, Chris Carr, Dean Corbin, and Hector Villareal were founders and principals of CVA that entered into the critical agreements with Rhapsody, breached those agreements, participated in concert with CVA, INOX and others to copy Rhapsody's copyrighted software, and further participated with CVA, INOX and others to conceal the copying by removing Rhapsody's copyright notice and fraudulently adding INOX's copyright notice. Defendants Messrs. Carr, Corbin, and Villareal may be served with process at 9528 Warren Road, Mont Belvieu, Texas 77580.

5.      Upon information and belief, Defendant INOX India Ltd. is a foreign company with its principal place of business in Vadodara, Gujarat, India.  Pursuant to Tex. Civ. Prac. &

Rem. Code § 17.044, Defendant may be served with process via substituted service on the Texas Secretary of State. Substituted service on the Texas Secretary of State is appropriate, as INOX is a nonresident company that has engaged in business in Texas, but has not designated a resident agent for service of process. Also, this suit has arisen out of INOX's business done in this State.

6.      Upon information and belief, Defendants Does 1–10 are unknown unlicensed users of the infringing INOVA Software. Identities of Does 1–10 will be determined at a later date, once discovery is permitted. After such users of unlicensed software are identified, they will be formally added as defendants to this suit.

## JURISDICTION AND VENUE

7.      This is an action for violation of the copyright laws of the United States, Title 17, United States Code, more particularly, 17 U.S.C. §§ 501 *et seq*.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Plaintiff requests that this Court assume supplemental jurisdiction over the Texas state law claims for breach of contract and common law claims of unfair competition, unjust enrichment, and quantum meruit, pursuant to 28 U.S.C. § 1367.

9.      This Court has personal jurisdiction over Defendant Cryogenic Vessel Alternatives, Inc. because it is a Texas corporation with a principal place of business in Texas.

10.     This Court has personal jurisdiction over Defendants Chris Carr, Dean Corbin, and Hector Villareal, as they are all Texas residents.

11.     This Court has personal jurisdiction over Defendant INOX India Ltd. because: (1) many of the alleged facts occurred in this judicial District; (2) INOX has transacted or is transacting business in this District; (3) INOX has places of business in this District; and (4) INOX employs Texas residents through INOXCVA.

---

12.     This Court has personal jurisdiction over Defendants Does 1–10 because many of the alleged facts occurred in this judicial District and they have acted or are transacting business in this District.

13.     Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because (a) the acts of infringement and other wrongful conduct alleged occurred in the Southern District of Texas and (b) Defendants may be found in the Southern District of Texas.

## FACTUAL BACKGROUND

14.     Rhapsody is the owner of Exceed MRP Software, a copyrighted original work of authorship and a creative software program and solution that is used to manage business operations, including scheduling of transactions and suppliers and internal resources, so that the user of Rhapsody's software can produce expensive, complex industrial products cost effectively.  Rhapsody's copyrighted software solution is an industry leading solution that was created by Rhapsody's employees and contractors and refined over a long period of time. Rhapsody's software solution is a work of authorship that was literally created over a period of many man months and the expenditure of thousands of man-hours.  Moreover, Rhapsody's software solution was refined to complement the business needs of its users, particularly the needs of CVA.

15.     Rhapsody's copyrighted software solution automates many labor intensive tasks and produces many labor intensive reports thereby freeing its users to focus on their core businesses rather than report generation, budget forecasts and scheduling tasks.

16.     Rhapsody's experience and professionalism has been earned by servicing Fortune 500 companies, including leaders in the petrochemical, manufacturing, educational, and healthcare industries.

17.     In 2006, Rhapsody and CVA entered into a software development project, whereby Rhapsody would design, develop, produce, test/launch, as well as provide technical support, training, and maintenance with respect to software used for the design and manufacture of cryogenic vessels.  As part of this project, Rhapsody developed and licensed its Exceed MRP Software to CVA, pursuant to a software development agreement and end user license.  The software development agreement was signed by Mr. Plante, President of Rhapsody, and Mr. Carr, Vice President of CVA.  Pursuant to the agreement, Rhapsody was to provide CVA with a limited, non-transferable license, but at all times would retain ownership of the software, including the copyright.

18.     Cryogenic vessels are double walled cylindrical containers specifically designed for storage and transport of specialized materials, such as liquid gasses, requiring sub-zero temperatures.  The vessels are specifically designed to maintain temperature so as to maintain such materials in a liquid phase.  The vessels have application and use in the oil and gas industry, where they are often used for chemicals and cryogenic gases used in well stimulation and intervention.

19.     Incorporated in the software development agreement signed by Mr. Plante, President of Rhapsody, and Mr. Carr, Vice President of CVA, was an agreement that all software developed by Rhapsody was licensed pursuant to an End User License Agreement ("EULA").

20.     The applicable EULA specified that Rhapsody granted a non-exclusive and non-transferable license to the Exceed MRP Software, but that all *"[t]itle, copyright, intellectual*

property rights and distribution rights of the Software remain exclusively with [Rhapsody]."  The EULA also clearly stated, "[t]his Agreement constitutes a license for use only and is not in any way a transfer of ownership rights to the Software."  Except for providing CVA with a license to "use" the copyrighted software, CVA received no other rights to Rhapsody's software.  Specifically, the software development agreement between Rhapsody and CVA did not provide CVA with the right to create derivative works to Rhapsody's copyrighted software.

21.    In addition, the EULA specified that the Exceed MRP Software "may not be modified, reverse-engineered, or de-compiled in any manner through current or future available technologies."

22.    Moreover, the EULA specified that rights and obligations of the Agreement are personal rights granted to Licensee only and that Licensee is not permitted to transfer or assign any of the rights or obligations granted under the Agreement to any other person or legal entity.

23.    Incident to the software development project, Rhapsody contracted with Whiteboard Labs, to assist with development of the Exceed MRP Software.  Rhapsody and White Board Labs entered into a work for hire application development agreement, seeking to have the Exceed MRP Software completed by September of 2006.

24.    On May 19, 2010, Whiteboard Labs executed a copyright assignment pursuant to the development agreement, selling, assigning, and transferring to Rhapsody the entire right, tile, and interest in the Exceed MRP Software, including all rights to reproduce the copyrighted work; prepare derivative works based on the copyrighted work; distribute copies of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease or lending; display the copyrighted work publicly; and reproduce the copyrighted work in or on any kind of article, whether useful or otherwise.

25.     Rhapsody is the sole and exclusive owner of the copyright of Exceed MRP Software ("Copyrighted Work" or "Exceed MRP Software"), and as such, owns all right in and to the Exceed MRP Software, including the right to seek registration for the work and the right to pursue this action for copyright infringement.

26.     As a reminder of CVA's obligations to Rhapsody, on January 7, 2009, Rhapsody forwarded its 2009 EULA to CVA via an email from Mr. Plante to CVA's Mr. Pinder.  That EULA was similar to the previous EULA and had similar restrictions regarding all title, copyright, intellectual property rights and distribution rights of the Exceed MRP Software belonging exclusively to Rhapsody.  In addition, the EULA noted that it was only a license and not an attempt to transfer any ownership rights to the Exceed MRP Software.  The EULA restricted the rights of the Licensee to transfer, assign, or permit the use of the Software by one or more third parties.  The EULA further specified that the Exceed MRP Software could not be modified, reverse-engineered, or de-compiled in any manner.

27.     Upon information and belief, in 2009, INOX India Limited ("INOX") acquired a majority interest in CVA.  Upon information and belief, at the present time, INOX and CVA run a combined enterprise, INOXCVA, which is run from CVA's headquarters in Mont Belvieu, Texas.  Upon information and belief, INOXCVA offers cryogenic storage, transportation and distribution products to primarily the industrial gas and oil field stimulation equipment markets.

28.     On information and belief, as part of the acquisition of CVA by INOX, CVA transferred Rhapsody's copyrighted Exceed MRP Software to INOX in violation and derogation of the express terms of the above-referenced EULA.  On further information and belief, the value of CVA was significantly enhanced by the transfer of Rhapsody's copyrighted Exceed MRP

Software and CVA's principals profited handsomely from the improper and unlicensed use by INOX of Rhapsody's copyrighted software.

29.     In 2010, Rhapsody became aware that INOX had acquired a majority interest in CVA.  On May 24, 2010, counsel for Rhapsody contacted INOX to notify and inform it of the limitations on any use of the Exceed MRP Software by third parties, as agreed to by CVA.  *See* Exhibit A.  Although the allegations made by counsel for Rhapsody were of a serious nature, this letter was wholly ignored by INOX.

30.     On September 8, 2011, counsel for Rhapsody sent an additional letter to Mr. Carr, Vice President of Operations for CVA, notifying CVA of Rhapsody's discovery of its use of an illegal copy of the Exceed MRP Software which CVA had branded as "INOVA Software."  *See* Exhibit B.   The letter specified that the illegal copy was found on the website http://inova.cvatanks.com and notified CVA that such an illegal copy was a material breach of the EULA.  Given the material breach of the EULA by CVA, Rhapsody notified CVA that its license pursuant to the EULA was immediately terminated due to CVA's material breach.  CVA and INOX did not protest the immediate termination by Rhapsody of the software license to Rhapsody's copyrighted Exceed MRP Software.

31.     Following the termination of CVA's license to use Rhapsody's copyrighted Exceed MRP Software, counsel for Rhapsody sent another letter to Mr. Carr of CVA on October 10, 2011, requesting written confirmation that CVA had wholly ceased its use of the Exceed Software and had further ceased all use of infringing copies including the infringing INOVA Software.  A deadline of October 21, 2011 was set forth to receive such written confirmation and Rhapsody noted that if it did not receive a response by that date, that it would assume CVA's continued use of its Exceed Software and the infringing INOVA Software.  *See* Exhibit C.

32.     A letter dated November 18, 2011 was sent by counsel at Bracewell & Giuliani to counsel for Rhapsody, alleging that the Rhapsody allegations were without merit and that CVA had ceased its use of the Exceed MRP Software.  *See* Exhibit D.  The letter explained that after a business dispute with Rhapsody, CVA had hired another software development company to create a new software product for CVA, entitled INOVA.  CVA noted that while there are a few similarities between Exceed and INOVA, that the INOVA developers did not have access to the source code of the Exceed MRP Software.  The letter denied CVA's use of the Exceed Software; use of the Exceed MRP Software source code to develop the INOVA Software; and any merits to Rhapsody's potential claims for misappropriation or copyright infringement.  In addition, the letter alleged that CVA had a different version of the agreement between Rhapsody and CVA, which was "not signed by anyone", and disputed the validity and veracity of the signed version in Rhapsody's possession.  The letter also denied that any EULA had ever accompanied the agreement.

33.     Counsel for Rhapsody responded on December 1, 2011, requesting the CVA version of the software development agreement referenced in the November 18th letter.  On December 2, 2011, counsel for CVA responded by sending a copy of a document entitled "Rhapsody Solutions, Software Development Project, Cryogenic Vessel Alternatives Simplified MRP Application."  That document was not signed.

34.     The software allegedly created by INOVA for CVA and INOX is substantially similar to Rhapsody's copyrighted software.

35.     On information and belief, the software allegedly created by INOVA for CVA and INOX was created by copying a substantial portion of Rhapsody's copyrighted software in derogation of the copyrights statutes and the EULA.

36.     Upon information and belief, in creating an unlicensed infringing derivative work based upon the Exceed MRP Software, CVA removed Rhapsody's notice of ownership and other indicia of ownership information from the Exceed MRP Software in violation of the Digital Millennium Copyright Statute.

37.     Upon information and belief, CVA then placed a fraudulent copyright notice on the infringing derivative work, the INOVA Software.  The fraudulent copyright notice was an attempt to disguise the use of Rhapsody's software and an attempt to deprive Rhapsody of its ownership and rights.

38.     Upon information and belief, CVA's Software appears to be a virtual copy of the Exceed MRP Software, particularly of the menus and screens, such that the look and feel of each infringing INOVA software program is essentially identical to Rhapsody's original copyrighted program.  Many of the same key terms/labels, menu options, sub-menu options, and tab sequences used within the Exceed MRP Software are also used by the INOVA Software. Exemplary of such copying, a side-by-side comparison of a screen shot of the Exceed MRP Software and INOVA Software clearly reveals the copying.  *See* Exhibit E.   As noted, Exhibit E is exemplary; there are many other screens that are similar if not identical which clearly reveal the full extent of the copying.

39.     On January 30, 2012, counsel for Rhapsody submitted an application to the Copyright Office for registration of the Exceed MRP Software.  The Copyright Office has assigned the application case no. 1-712637201.  This Court has jurisdiction of this suit by virtue of the fact that Plaintiff has applied for a copyright registration prior to the filing of this litigation.

## COUNT 1:  COPYRIGHT INFRINGEMENT BY CVA – 17 U.S.C. § 501

40.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

41.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

42.     Defendant CVA had access to the Exceed MRP Software by virtue of its prior relationship with Rhapsody and as part of the software development agreement and project between the two companies.

43.     Defendant CVA is willfully infringing Plaintiff's Copyright in its Exceed MRP Software by copying and reproducing the text, artwork, and computer program itself protected by Plaintiff's copyright.

44.      Defendant CVA is willfully infringing Plaintiff's Copyright in its Exceed MRP Software by preparing and using an unlicensed derivative work based upon the Exceed MRP Software– the INOVA Software.

45.     Defendant CVA is engaged in the advertising, marketing, installation, offering, distribution, and/or licensing of computer software for the manufacture and design of cryogenic vessels, the INOVA Software, which is a derivative work of Rhapsody's copyrighted Exceed MRP Software.

46.     Defendant CVA is also engaged in the use of the infringing derivative work, the INOVA Software, in designing and manufacturing cryogenic vessels which it sells.

47.     Defendant CVA was aware of Plaintiff's copyright in the Exceed MRP Software prior to the aforesaid acts of infringement and continued unabated to copy, prepare derivative works and distribute such infringing derivative works in willful violation of Plaintiff's copyright. CVA was further made aware of Plaintiff's copyright by Plaintiff's counsel's letters, and

thereafter attempted to conceal its copying and infringement while continuing to willfully infringe the Copyrighted Work.

48.     Defendant CVA's own INOVA Software is identical in parts and substantially and confusingly similar to Plaintiff's Copyrighted Work.

49.     The foregoing acts constitute copyright infringement in violation of 17 U.S.C. §501.  The foregoing acts further constitute willful acts of copyright infringement.

50.     Rhapsody is entitled to receive all profits derived by CVA that are attributable to such infringement including the value derived by CVA when it sold an equity interest to INOX. Further, Rhapsody is entitled to receive all profits derived by CVA, including profits derived from design, construction and sale of cryogenic vessels that are attributable to use of the infringing software.

## COUNT 2:  COPYRIGHT INFRINGEMENT BY CVA'S PRINCIPALS: MESSRS. CARR, CORBIN, & VILLAREAL

51.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

52.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

53.     Defendants Messrs. Carr, Corbin, and Villareal as CVA's principals directed the activities of CVA and CVA's acts of infringement are directly attributable to Messrs. Carr, Corbin, and Villareal.

54.     Messrs. Carr, Corbin, and Villareal had access to the Exceed MRP Software by virtue of CVA's prior relationship with Rhapsody and as part of the software development agreement and project between the two companies.

55.     Defendants Messrs. Carr, Corbin, and Villareal are willfully infringing Plaintiff's Copyright in its Exceed MRP Software by directing the copying and reproducing the text, artwork, and computer program itself protected by Plaintiff's copyright.

56.      Defendants Messrs. Carr, Corbin, and Villareal are willfully infringing Plaintiff's Copyright in its Exceed MRP Software by directing CVA acts of preparing and using an unlicensed derivative work based upon the Exceed MRP Software– the INOVA Software.

57.     Defendants Messrs. Carr, Corbin, and Villareal are responsible for directing CVA's acts of advertising, marketing, installation, offering, distribution, and/or licensing of computer software for the manufacture and design of cryogenic vessels, the INOVA Software, which is a derivative work of Rhapsody's copyrighted Exceed MRP Software.

58.     Defendants Messrs. Carr, Corbin, and Villareal are responsible for directing CVA's acts in the use of the infringing derivative work, the INOVA Software, in designing and manufacturing cryogenic vessels which CVA sells.

59.     Defendants Messrs. Carr, Corbin, and Villareal were aware of Plaintiff's copyright in the Exceed MRP Software prior to the aforesaid acts of infringement and continued unabated to copy, prepare derivative works and distribute such infringing derivative works in willful violation of Plaintiff's copyright.  Defendants Messrs. Carr, Corbin, and Villareal were further made aware of Plaintiff's copyright by Plaintiff's counsel's letters, and thereafter attempted to conceal their infringement while continuing to willfully infringe the Copyrighted Work.

60.     Defendants Messrs. Carr, Corbin, and Villareal participated in preparation and completion of CVA's own INOVA Software that is substantially identical in parts and confusingly similar to Plaintiff's Copyrighted Work.

61.     The foregoing acts constitute copyright infringement in violation of 17 U.S.C. §501.  The foregoing acts further constitute willful acts of copyright infringement.

62.     Rhapsody is entitled to receive all profits derived by CVA, including Defendants Messrs. Carr, Corbin, and Villareal, that are attributable to such infringement including the value derived by CVA and its principals, Messrs. Carr, Corbin, and Villareal, when it sold an equity interest to INOX.  Further, Rhapsody is entitled to receive all profits derived by CVA, including Messrs. Carr, Corbin, and Villareal, including profits derived from design, construction and sale of cryogenic vessels that are attributable to use of the infringing software.

## COUNT 3:  COPYRIGHT INFRINGEMENT BY INOX – 17 U.S.C. § 501

63.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

64.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

65.     Defendant INOX had unlicensed access to the Exceed MRP Software by virtue of its acquisition of a majority interest in CVA, which had a prior relationship with Rhapsody and access to the Copyrighted Work, pursuant to a software development agreement and project between the two companies.  INOX's access and use of Rhapsody's copyrighted software was in derogation of the rights granted to CVA.

66.     Defendant INOX's unlicensed access to and unlicensed use of Rhapsody's copyrighted software program is in violation of the rights granted to CVA pursuant to the EULA.

67.     Defendant INOX is willfully infringing Plaintiff's Copyright in its Exceed MRP Software by accessing and using the infringing copy, the INOVA Software.

68. Defendant INOX is willfully infringing Plaintiff's Copyright in its Exceed MRP by accessing and using the INOVA Software through its subsidiary, Defendant CVA, as part of its combined enterprise, INOXCVA.

69. To the extent that INOX is also licensing the infringing program INOVA Software to its suppliers and vendors and/or receiving licensing revenues from INOVA Software, INOX is distributing unauthorized and unlicensed copies of Rhapsody's copyright program and thereby willfully infringing Plaintiff's Copyright in its Exceed MRP Software.

70. INOVA Software is an unlicensed and infringing derivative work based on the Exceed MRP Software, for designing and manufacturing cryogenic vessels which it sells through its subsidiary, Defendant CVA, and/or as part of its combined enterprise, INOXCVA.

71. Defendant INOX sells cryogenic vessels made and designed with the use of the INOVA Software, individually, and/or through its subsidiary, Defendant CVA, as part of its combined enterprise, INOXCVA.

72. Defendant INOX was aware of Plaintiff's copyright in the Exceed MRP Software, prior to the aforesaid acts of infringement and continued unabated to copy, prepare derivative works and distribute such infringing derivative works in willful violation of Plaintiff's copyright. INOX was further made aware of Plaintiff's copyright by Plaintiff's counsel's letters, thereafter attempted to conceal their infringement while continuing to willfully infringe the Copyrighted Work.

73. Defendant INOX's subsidiary's, Defendant CVA's, own INOVA Software is substantially identical in parts and substantially and confusingly similar to Plaintiff's Copyrighted Work.

74.     The foregoing acts constitute copyright infringement in violation of 17 U.S.C. §501.  The foregoing acts further constitute willful acts of copyright infringement.  Rhapsody is entitled to receive all profits derived by INOX that are attributable to such infringement including the value paid to CVA when it purchased an equity interest in CVA.   Further Rhapsody is entitled to receive all profits derived by INOX, including profits derived from design, construction and sale of cryogenic vessels that are attributable to use of the infringing software.

## COUNT 4:  INDUCEMENT OF COPYRIGHT INFRINGEMENT

75.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

76.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

77.     Defendants Messrs. Carr, Corbin, and Villareal as CVA's principals directed the activities of CVA and induced CVA's acts of infringement.

78.     Messrs. Carr, Corbin, and Villareal had access to the Exceed MRP Software by virtue of CVA's prior relationship with Rhapsody and as part of the software development agreement and project between the two companies.

79.     Defendants Messrs. Carr, Corbin, and Villareal actively induced CVA to willfully infringe Plaintiff's Copyright in its Exceed MRP Software by directing the copying and reproducing the text, artwork, and computer program itself protected by Plaintiff's copyright.

80.      Defendants Messrs. Carr, Corbin, and Villareal actively induced CVA to willfully infringe Plaintiff's Copyright in its Exceed MRP Software by directing CVA's acts of preparing and using an unlicensed derivative work based upon the Exceed MRP Software– the INOVA Software.

81.     Defendants Messrs. Carr, Corbin, and Villareal are responsible for inducing CVA's acts of advertising, marketing, installation, offering, distribution, and/or licensing of computer software for the manufacture and design of cryogenic vessels, the INOVA Software, which is a derivative work of Rhapsody's copyrighted Exceed MRP Software.

82.     Defendants Messrs. Carr, Corbin, and Villareal are responsible for inducing CVA's acts and use of the infringing derivative work, the INOVA Software, in designing and manufacturing cryogenic vessels which CVA sells.

83.     Defendants Messrs. Carr, Corbin, and Villareal were aware of Plaintiff's copyright in the Exceed MRP Software prior to the aforesaid acts of inducement of copyright infringement and continued unabated to direct CVA's acts of infringement including copying, preparing derivative works and distributing such infringing derivative works in willful violation of Plaintiff's copyright.  Defendants Messrs. Carr, Corbin, and Villareal were further made aware of Plaintiff's copyright by Plaintiff's counsel's letters, and thereafter attempted to further their acts of inducement by concealing CVA's infringement while continuing to induce CVA to willfully infringe the Copyrighted Work.

84.     Defendants Messrs. Carr, Corbin, and Villareal participated in inducing CVA to prepare and complete CVA's own INOVA Software that is substantially identical in parts and confusingly similar to Plaintiff's Copyrighted Work.

85.     The foregoing acts constitute an inducement to infringe a copyrighted work in violation of 17 U.S.C. §501.  The foregoing acts further constitute willful acts of copyright infringement.

86.     Rhapsody is entitled to receive all profits derived by CVA, including Defendants Messrs. Carr, Corbin, and Villareal, that are attributable to such inducement including the value

derived by CVA and its principals, Messrs. Carr, Corbin, and Villareal, when it sold an equity interest to INOX.  Further, Rhapsody is entitled to receive all profits derived by CVA, including Messrs. Carr, Corbin, and Villareal, including profits derived from design, construction and sale of cryogenic vessels that are attributable to use of the infringing software.

### COUNT 5:  COPYRIGHT INFRINGEMENT BY DOES 1–10 – 17 U.S.C. § 501

87.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

88.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

89.     On information and belief Defendants Does 1–10 are vendors and customers of INOX, CVA and or INOXCVA that are using infringing copies of Plaintiff's copyrighted Exceed MRP Software by their licensing, accessing, and/or use of the infringing copy of INOVA Software in connection with the business transacted between the Defendants and each of said Does 1–10.   INOVA Software is an unlicensed and infringing derivative work based on the Exceed MRP Software, for designing and manufacturing cryogenic vessels sold by Defendants CVA and/or INOX, and/or their combined enterprise, INOXCVA.

90.     Defendants Does 1–10 have purchased cryogenic vessels made and designed with the use of the INOVA Software, from Defendants CVA and/or INOX, and/or their combined enterprise, INOXCVA and used the infringing INOVA Software in connection with the planning and design of the cryogenic vessels purchased by Does 1–10.

91.     The foregoing acts constitute copyright infringement in violation of 17 U.S.C. §501.

92.     Rhapsody is entitled to receive all profits derived by such DOES 1–10 that are attributable to such infringement including profits derived from design, construction and sale of cryogenic vessels that are attributable to use of the infringing software.

### COUNT 6:  VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT-FALSE COPYRIGHT MANAGEMENT INFORMATION BY CVA

93.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

94.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

95.     Plaintiff's Exceed MRP Software contains copyright management information embedded within the code including but not limited to a notice of ownership.

96.     Defendant CVA intentionally removed and/or altered copyright management information appearing within the Exceed MRP Software code, as well as the notice of Rhapsody's ownership when CVA created an infringing derivative work, the INOVA Software, based upon the Exceed MRP Software.

97.     Defendant CVA's purpose for applying its own copyright notice after removing Rhapsody's copyright notice was to conceal its theft of Rhapsody's software by concealing the identity of the rightful owner of the software and thereby deprive Rhapsody of the fruits of its development efforts of the Exceed MRP Software.

98.     Defendant CVA intentionally applied its own fraudulent copyright notice and other indicia of ownership in violation of 17 U.S.C. § 1202 (a), knowing that it derived and created the infringing copy INOVA Software using a substantial portion of Rhapsody's Exceed MRP Software from which CVA had removed or altered the copyright management information without the authority of Rhapsody.

99.     Defendant CVA then proceeded to use the infringing copy INOVA Software, knowing that the copyright management information embedded within the code of Rhapsody's Exceed MRP Software had been removed or altered without the authority of Rhapsody.

100.    Defendant CVA sells cryogenic vessels made and designed with the use of the INOVA Software, individually, and/or as part of its combined enterprise with INOX, INOXCVA.

101.    Defendant CVA had reasonable grounds to know that its actions would facilitate its own infringement.

102.    The foregoing acts constitute a violation of 17 U.S.C. § 1202 (a) of the Digital Millennium Copyright Act.

103.    Rhapsody is entitled to recover damages and its attorneys' fees pursuant to 17 U.S.C. §1203 for each violation of the statute.

## COUNT 7:  VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT-REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION BY CVA

104.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

105.    Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

106.    Plaintiff's Exceed MRP Software contains copyright management information embedded within the code including but not limited to a notice of ownership.

107.    Defendant CVA intentionally removed and/or altered copyright management information appearing within the Exceed MRP Software code, as well as the notice of Rhapsody's ownership, in violation of 17 U.S.C. § 1202 (b) when CVA created an infringing derivative work, INOVA Software, based upon the Exceed MRP Software.

108.     Defendant CVA's purpose for removing Rhapsody's copyright notice was to conceal its theft of Rhapsody's software by concealing the identity of the rightful owner of the software and thereby deprive Rhapsody of the fruits of its development efforts of the Exceed MRP Software.

109.     Defendant CVA then proceeded to use the infringing copy INOVA Software, knowing that the copyright management information embedded within the code of Rhapsody's Exceed MRP Software had been removed or altered without the authority of Rhapsody.

110.     Defendant CVA sells cryogenic vessels made and designed with the use of the INOVA Software, individually, and/or as part of its combined enterprise with INOX, INOXCVA.

111.     Defendant CVA had reasonable grounds to know that its actions would facilitate and conceal its own infringement.

112.     The foregoing acts constitute a violation of 17 U.S.C. § 1202 (b) of the Digital Millennium Copyright Act.

113.     Rhapsody is entitled to recover damages and its attorneys' fees pursuant to 17 U.S.C. §1203 for each violation of the statute.

### COUNT 8:  VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT-FALSE COPYRIGHT MANAGEMENT INFORMATION BY CVA'S PRINCIPALS: MESSRS. CARR, CORBIN, & VILLAREAL

114.     Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

115.     Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

116.     Plaintiff's Exceed MRP Software contains copyright management information embedded within the code including but not limited to a notice of ownership.

117.    Defendants Messrs. Carr, Corbin, and Villareal directed CVA's acts of intentionally removing and/or altering copyright management information appearing within the Exceed MRP Software code, as well as the notice of Rhapsody's ownership when CVA created an infringing derivative work, the INOVA Software, based upon the Exceed MRP Software.

118.    Defendants Messrs. Carr's, Corbin's, and Villareal's purpose of directing CVA to apply CVA's copyright notice after removing Rhapsody's copyright notice was to conceal CVA's theft of Rhapsody's software by concealing the identity of the rightful owner of the software and thereby deprive Rhapsody of the fruits of its development efforts of the Exceed MRP Software.

119.    Defendants Messrs. Carr, Corbin, and Villareal intentionally directed CVA to apply its own fraudulent copyright notice and other indicia of ownership in violation of 17 U.S.C. § 1202 (a), knowing that they derived and created the infringing copy INOVA Software using a substantial portion of Rhapsody's Exceed MRP Software from which they had removed or altered the copyright management information without the authority of Rhapsody.

120.    Defendants Messrs. Carr, Corbin, and Villareal directed CVA to use the infringing copy INOVA Software, knowing that the copyright management information embedded within the code of Rhapsody's Exceed MRP Software had been removed or altered without the authority of Rhapsody.

121.    Defendants Messrs. Carr, Corbin, and Villareal direct the operations of CVA which sells cryogenic vessels made and designed with the use of the INOVA Software, individually, through CVA, and/or as part of CVA's combined enterprise with INOX, INOXCVA.

122.    Defendants Messrs. Carr, Corbin, and Villareal had reasonable grounds to know that their actions would facilitate and conceal CVA's acts of infringement.

123.    The foregoing acts constitute a violation of 17 U.S.C. § 1202 (a) of the Digital Millennium Copyright Act.

124.    Rhapsody is entitled to recover damages and its attorneys' fees pursuant to 17 U.S.C. §1203 for each violation of the statute.

## COUNT 9:  VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT- REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION BY CVA'S PRINCIPALS: MESSRS. CARR, CORBIN, & VILLAREAL

125.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

126.    Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

127.    Plaintiff's Exceed MRP Software contains copyright management information embedded within the code including but not limited to a notice of ownership.

128.    Defendants Messrs. Carr, Corbin, and Villareal intentionally directed CVA to remove and/or alter copyright management information appearing within the Exceed MRP Software code, as well as the notice of Rhapsody's ownership, in violation of 17 U.S.C. § 1202 (b) when CVA created an infringing derivative work, INOVA Software, based upon the Exceed MRP Software.

129.    Defendants Messrs. Carr's, Corbin's, and Villareal's purpose of directing CVA to remove Rhapsody's copyright notice was to conceal CVA's theft of Rhapsody's software by concealing the identity of the rightful owner of the software and thereby deprive Rhapsody of the fruits of its development efforts of the Exceed MRP Software.

130.    Defendants Messrs. Carr, Corbin, and Villareal then proceeded to direct the use of the infringing copy INOVA Software, knowing that the copyright management information embedded within the code of Rhapsody's Exceed MRP Software had been removed or altered without the authority of Rhapsody.

131.    Defendants Messrs. Carr, Corbin, and Villareal through CVA sell cryogenic vessels made and designed with the use of the INOVA Software, individually, through CVA, and/or as part of CVA's combined enterprise with INOX, INOXCVA.

132.    Defendants Messrs. Carr, Corbin, and Villareal had reasonable grounds to know that their actions would facilitate and conceal CVA's acts of infringement.

133.    The foregoing acts constitute a violation of 17 U.S.C. § 1202 (b) of the Digital Millennium Copyright Protection Act.

134.    Rhapsody is entitled to recover damages and its attorneys' fees pursuant to 17 U.S.C. §1203 for each violation of the statute.

### COUNT 10:  VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT- FALSE COPYRIGHT MANAGEMENT INFORMATION BY INOX

135.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

136.    Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

137.    Plaintiff's Exceed MRP Software contains copyright management information embedded within the code including but not limited to a notice of ownership.

138.    Defendant INOX intentionally removed and/or altered copyright management information appearing within the Exceed MRP Software code, as well as the notice of Rhapsody's ownership when INOX created an infringing derivative work, INOVA Software, based upon the Exceed MRP Software.

139.    Defendant CVA's purpose for applying its own copyright notice after removing Rhapsody's copyright notice was to conceal its theft of Rhapsody's software by concealing the identity of the rightful owner of the software and thereby deprive Rhapsody of the fruits of its development efforts of the Exceed MRP Software.

140.    Defendant INOX intentionally applied its own fraudulent copyright notice and other indicia of ownership in violation of 17 U.S.C. § 1202 (a), knowing that it derived and created the infringing copy INOVA Software using a substantial portion of Rhapsody's Exceed MRP Software from which INOX had removed or altered the copyright management information without the authority of Rhapsody.

141.    Defendant INOX then proceeded to use the infringing copy INOVA Software, knowing that the copyright management information embedded within the code of Rhapsody's Exceed MRP Software had been removed or altered without the authority of Rhapsody.

142.    Defendant INOX sells cryogenic vessels made and designed with the use of the INOVA Software, individually, and/or as part of its combined enterprise with CVA, INOXCVA.

143.    Defendant INOX had reasonable grounds to know that its actions would facilitate and conceal its own infringement.

144.    The foregoing acts constitute a violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202 (a), Copyright Protection and Management Systems.

145.    Rhapsody is entitled to recover damages and its attorneys' fees pursuant to 17 U.S.C. §1203 for each violation of the statute.

### COUNT 11:  VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT- REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION BY INOX

146.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

147.   Plaintiff is the owner of a valid U.S. Copyright in its Exceed MRP Software.

148.   Plaintiff's Exceed MRP Software contains copyright management information embedded within the code including but not limited to a notice of ownership.

149.   Defendant CVA intentionally removed and/or altered copyright management information appearing within the Exceed MRP Software code, as well as the notice of Rhapsody's ownership, in violation of 17 U.S.C. § 1202 (b) when CVA created an infringing derivative work, INOVA Software, based upon the Exceed MRP Software.

150.   Defendant CVA's purpose for removing Rhapsody's copyright notice was to conceal its theft of Rhapsody's software by concealing the identity of the rightful owner of the software and thereby deprive Rhapsody of the fruits of its development efforts of the Exceed MRP Software.

151.   Defendant CVA then proceeded to use the infringing copy INOVA Software, knowing that the copyright management information embedded within the code of Rhapsody's Exceed MRP Software had been removed or altered without the authority of Rhapsody.

152.   Defendant CVA sells cryogenic vessels made and designed with the use of the INOVA Software, individually, and/or as part of its combined enterprise with INOX, INOXCVA.

153.   Defendant CVA had reasonable grounds to know that its actions would facilitate and conceal its own infringement.

154.   The foregoing acts constitute a violation of the Copyright Protection and Management Systems Act, specifically 17 U.S.C. § 1202 (b).

155.   Rhapsody is entitled to recover damages and its attorneys' fees pursuant to 17 U.S.C. §1203 for each violation of the statute.

## COUNT 12: VIOLATION OF THE LANHAM ACT 15 U.S.C. §1125–FALSE ADVERTISING

156.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

157.    Upon information and belief, in creating INOVA Software, a derivative work based upon the Exceed MRP Software, CVA removed Rhapsody's notice of ownership and other information from the Exceed MRP Software.  Then, CVA placed a fraudulent copyright notice on its INOVA Software.

158.    Upon information and belief, CVA's INOVA Software utilizes many of the same, if not similar, screen displays as the Exceed MRP Software.  Thus, the look and feel of the Exceed MRP Software and INOVA Software is essentially the same in many places.

159.    Defendants CVA and INOX, as part of their combined enterprise, INOXCVA, have deceived both prospective and current customers regarding the origin of the Exceed MRP Software by falsely designating CVA and INOXCVA as the origin of the Exceed MRP Software and the derivative work, the INOVA Software.

160.    In addition, Defendants CVA and INOX, as part of their combined enterprise, INOXCVA, have deceived their customers regarding the nature of and their ownership of the INOVA Software used to design and manufacture cryogenic vessels sold through INOX, CVA, and/or INOXCVA.   Defendants CVA and INOX' use of the INOVA Software suggests implicitly that they rightfully own the INOVA Software, a derivative work based upon the Exceed MRP Software, in violation of the Lanham Act.

161.    Any statements made regarding ownership of the INOVA Software and/or Exceed MRP Software to prospective and/or current customers of INOX, CVA, and/or INOXCVA, are

likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of their goods by Plaintiff when none exists.

162.    Defendants CVA  and INOX' use of the INOVA Software, which bears a substantial likeness to the Exceed MRP Software of Plaintiff, constitutes an invasion of valuable property rights belonging to Plaintiff in a manner that unjustly enriches Defendants CVA and INOX, as well as their combined enterprise, INOXCVA.

163.    Plaintiff has been injured as a result of Defendants CVA and INOX' statements.

164.    The foregoing violates 15 U.S.C. 1125 of the Lanham Act.

## COUNT 13: BREACH OF CONTRACT

165.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

166.    By its actions as outlined above, including but not limited to by preparing and using the infringing INOVA Software, and by permitting INOX to use the INOVA Software, Defendant CVA materially breached the EULA.

167.    Further INOX and CVA continued use of Rhapsody's software after the EULA was terminated.  Such continued use further constitutes a breach of contract.

168.    Said breaches directly and proximately caused damages to Plaintiff.

## COUNT 14: UNFAIR COMPETITION

169.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

170.    Defendants CVA and INOX are competing against Plaintiff through their use of an infringing software program.

171.    Defendants' conduct demonstrates their intent to unfairly promote their own interests at Plaintiff's detriment.  Plaintiff has a unique and pecuniary interest in the Exceed MRP Software which Defendants have infringed.  A significant amount of labor, time, skill, effort, and money went into Plaintiff's development of the Exceed MRP Software.  Accordingly, Plaintiff is entitled to recover damages suffered as a result of the Defendants' actions.

172.    Plaintiff has been damaged and will continue to be damaged by Defendants' actions as described above in an amount to be proven at trial.  Because Defendants' conduct is willful, intentional and done with malice, Plaintiff seeks exemplary damages to deter such conduct.

## COUNT 15: QUANTUM MERUIT

173.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

174.    Plaintiff provided its services to Defendant CVA in developing, producing, testing/launching, as well as providing support, training, and maintenance with respect to the Exceed MRP Software.

175.    Defendant CVA sold a portion of its business to Defendant INOX and likely profited from the value attributed by INOX to the illegally created derivative work, the INOVA Software, used for the design and manufacture of cryogenic vessels.

176.    Defendant CVA has also profited from Plaintiff's services and work in the Exceed MRP Software through its licensing efforts related to the INOVA Software.

177.    Defendant CVA has been unjustly enriched as a result of Plaintiff's efforts in the development of the Exceed MRP Software and Plaintiff was not fully compensated for the Exceed MRP Software.

## COUNT 16: UNJUST ENRICHMENT

178.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

179.    Messrs. Carr, Corbin, and Villareal breached the agreements with Rhapsody by transferring the Exceed MRP Software to INOX in connection with the sale of CVA to INOX.

180.    The Exceed MRP Software subsequently formed the basis for the infringing INOVA Software which is a substantially similar copy of Exceed MRP Software.

181.    Rhapsody's software and the infringing copy of the INOVA Software was a substantial aspect of the sale of the business.  As such, CVA principals profited from transferring Rhapsody's software when they sold CVA to INOX.

182.    CVA's principals were unjustly enriched in the sale of CVA inasmuch as they transferred and purported to sell an asset that was owned by Rhapsody.

## COUNT 17: TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

183.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

184.    On information and belief, CVA and INOX knew that Rhapsody had other licensing opportunities for its copyrighted program and as such that there was a reasonable probability that the Rhapsody and a third party would have entered into a contractual relationship for use of the copyrighted program.

185.    Defendants' wrongful act of preparing a derivative work of the copyrighted program likely prevented Rhapsody for entering into a contractual relationship with such third parties.

186.    In creating an infringing program substantially identical to Rhapsody's program, the Defendants acted with a conscious desire to prevent Rhapsody's relationship with such third parties from occurring or knew that the interference was certain or substantially certain to occur as a result of the conduct.

187.    Rhapsody incurred actual harm or damage as a result of the Defendants' interference

### COUNT 18: REQUEST FOR PERMANENT INJUNCTION

188.    Plaintiff refers to and incorporates all preceding paragraphs as though fully set forth herein.

189.    Plaintiff asks this Court to find that it is the rightful owner of all right, title and interest in Exceed MRP Software and that the INOVA Software is an infringing copy of such program.

190.    Plaintiffs further asks this Court to set Plaintiff's application for permanent injunction for a full trial on the merits and, after the trial, issue a permanent injunction against Defendant's use of the INOVA Software and any other substantially similar program.

### DAMAGES

191.    Plaintiff is entitled to recover its actual damages and any additional profits of the infringer pursuant to 15 U.S.C. § 504, for copyright infringement of its Exceed MRP Software. In calculating the infringer's profits, Plaintiff respectfully asks this Court to consider INOX' acquisition of a majority interest in CVA and that the value of CVA was largely derived from the value of its INOVA Software, an unlicensed, infringing derivative work created without the permission of Plaintiff.

192.    Plaintiff is further entitled to damages for Defendants' willful copyright infringement.

193.    Plaintiff is further entitled to recover all of Defendants' profits attributable to the use of the infringing copy of Rhapsody's Exceed MRP Software.

194.    Plaintiff is further entitled to recover damages and attorneys' fees pursuant to 17 U.S.C. §1203 for violations of the Digital Millennium Copyright Act.

195.    Plaintiff is also entitled to impoundment and/or destruction of all copies of its Exceed MRP Software, and the derivative work, INOVA Software, by Defendants, pursuant to 15 U.S.C. § 503.

196.    Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502.  Plaintiff has no adequate remedy at law for Defendant's wrongful conduct because, among other things, Rhapsody's Exceed MRP Software is unique and valuable property, which has no readily determinable market value.  Defendants' infringement harms Rhapsody such that it cannot be made whole by any monetary award.  In addition, Defendants' wrongful conduct is continuing.

197.    Plaintiff seeks to recover all out-of-pocket losses that it has sustained.   In addition, Plaintiff has sustained actual damages including direct and consequential damages, as well as special damages, as a result of Defendant's acts, including but not limited to: loss of profit; loss of business opportunity; loss of investment opportunity and damages related to Plaintiff's inability to enjoy the benefit of the exclusivity of Plaintiff's copyrighted software. Plaintiff also reserves its right to seek statutory damages.

198.    In addition to Plaintiff's actual damages, Plaintiff is entitled to recover exemplary damages.  Defendant's conduct was done knowingly, with actual awareness, malice and intent,

or with such an entire want of care as to indicate that the acts and omissions in question were the result of conscious indifference to the rights and welfare of Plaintiff.

199.    Finally, Plaintiff seeks to recover prejudgment interest on all elements of damages incurred in the past as provided by law; post-judgment interest on the judgment rendered in this case at the legal rate, until paid in full; and costs of court.

200.    Due to Defendant's conduct, it has been necessary for Plaintiff to employ counsel to prosecute this action on its behalf.  Accordingly, Plaintiff seeks recovery of its attorneys' fees and reasonable costs from Defendant pursuant to 17 U.S.C. § 505 and Tex. Civ. Prac. & Rem. Code § 38.001 and applicable provisions of the Copyright statutes.

## PRAYER FOR RELIEF

Plaintiff Rhapsody prays for the following relief:

A.    Enter an order requiring Defendants to account to Plaintiff for any and all profits derived by Defendants and for all damages sustained by Plaintiff by reason of Defendant's acts complained of herein;

B.    A judgment of joint and several liability by all Defendants;

C.    A judgment that Defendants have infringed the Plaintiff's Copyright in its Exceed MRP Software;

D.    Award Plaintiff the requested permanent injunctive relief;

E.    Award Plaintiff compensatory damages in an amount yet to be determined for Defendant's acts complained of herein and/or statutory damages;

F.    Award Plaintiff exemplary damages in an amount to be determined at trial for the willful, deliberate, and malicious acts of Defendant;

G.    Award Plaintiff its reasonable attorneys' fees and costs of suit herein; and

H.     Award Plaintiff any and all other relief as the Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Rhapsody hereby demands that all issues be determined by a jury.

DATED:          April 17, 2012                   Respectfully submitted,

                                         */s/ Russell T. Wong*
                                         Russell T. Wong
                                         *Attorney-in-Charge*
                                         S.D.T.X. Fed. I.D. No. 6254
                                         Texas State Bar No. 21884235
                                         J. David Cabello
                                         S.D.T.X. Fed. I.D. No. 3514
                                         Texas State Bar No. 03574500
                                         Sarah R. Cabello
                                         S.D.T.X. Fed. I.D. No. 1,023,828
                                         Texas State Bar No. 24052877
                                         WONG, CABELLO, LUTSCH,
                                            RUTHERFORD & BRUCCULERI, L.L.P.
                                         20333 State Hwy. 249, Ste. 600
                                         Houston, Texas 77070
                                         Telephone: (832) 446-2400
                                         Facsimile:  (832) 446-2424
                                         E-Mail: rwong@counselip.com
                                         E-Mail: dcabello@counselip.com
                                         E-Mail: scabello@counselip.com

                                         **COUNSEL FOR PLAINTIFF**
                                         **RHAPSODY SOLUTIONS LLC**