IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RHAPSODY SOLUTIONS, LLC,                §
                                        §
        Plaintiff,                      §
                                        §
v.                                      §
                                        §      CIVIL ACTION No. H-12-1168
                                        §
CRYOGENIC VESSEL ALTERNATIVES,          §
INC., CHRIS CARR, Individually,         §
DEAN CORBIN, Individually,              §
HECTOR VILLAREAL, Individually,         §
INOX INDIA LIMITED, DOES 1-10,          §
VCAN TECHNOLOGIES PVT, LTD.,            §
and VCAN TECHNOLOGIES, INC.,            §
                                        §
        Defendants,                     §
                                        §
v.                                      §
                                        §
JAMES H. PLANTE III,                    §
Individually,                           §
                                        §
        Third-Party Defendant.          §


<u>MEMORANDUM AND ORDER</u>


     Pending are Defendant INOX India Limited's Motions to Dismiss

for Lack of Personal Jurisdiction (Document No. 38)[1] and for

Failure to State a Claim (Document No. 39); and Plaintiff Rhapsody

Solutions's Motions for Default Judgment as to Defendant VCAN

Technologies, Inc. (Document No. 53) and to Strike the Declarations

---

[1] This motion was filed in response to Plaintiff's First
Amended Complaint, and supercedes INOX's Motion to Dismiss under
Rule 12(b)(2) (Document No. 17), which is DENIED as MOOT.  Because
INOX India Limited waived service of process, its earlier 12(b)(4)
and 12(b)(5) motions asserted in Document No. 17 are also MOOT.

of Parag Kulkarni (Document No. 58) (filed under seal).   After carefully considering the motions, responses, replies, and applicable law, the Court concludes as follows.

I.   Background

In this copyright dispute concerning the alleged infringement of business management software, Plaintiff Rhapsody Solutions, Inc. ("Plaintiff") alleges that it granted to Defendant Cryogenic Vessel Alternatives ("CVA") a non-transferable license to use its software product, "Exceed MRP," but that CVA and its parent company, Defendant INOX India Limited ("INOX"), developed a derivative work and are using the infringing software to manage their businesses. Plaintiff's Exceed MRP (Manufacturing Resource Planning) software assists businesses in tracking orders and in managing business operations, and was allegedly tailored to suit CVA's specific business needs.

Plaintiff alleges that it developed and licensed to CVA its Exceed MRP Software pursuant to a 2006 software development project ("Contract") with CVA; that the Contract provided that the license was limited and non-transferable; that Plaintiff at all times retained ownership of the software and copyright; and that the Contract incorporated an End User License Agreement ("EULA"), which--among other things--specified that the Exceed MRP Software may not be modified, reverse engineered, or de-compiled in any

2

manner through current or future technologies, and may be loaded
onto a maximum of one computer or server.[2]

In 2009, Defendant INOX India Limited ("INOX"), an Indian
company based in Vadovara, Gujarat, India, bought a 70% interest in
CVA.[3]  Both INOX and CVA are in the business of manufacturing
cryogenic vessels.  They represent on their combined website that
"INOX India and CVA are ONE" and refer to themselves as a "joint
entity" called "INOXCVA."[4]  On May 24, 2010, after learning of
INOX's acquisition of a majority interest in CVA, Plaintiff sent a
letter to INOX addressed to its Director and Chief Executive
Officer, Mr. Parag P. Kulkarni ("Kulkarni"), and copied to CVA
Director Chris Carr ("Carr"), reminding that: Plaintiff is the

---

[2] CVA denies that it signed the Contract, contends that
Plaintiff's copy of the Contract is missing portions of the
Contract, and asserts it did not agree to the EULA.  Plaintiff's
copy of the Contract is purportedly signed by Jimmy Plante for
Plaintiff and Chris Carr for CVA.  Both parties' versions of the
Contract specifically reference the EULA and further provide that
Plaintiff owns the software.  *Compare* Document No. 36, ex. B at 8
of 12 art. VIII *with* Document No. 37, ex. 1, at 6 of 7 art. VIII.
For purposes of these motions to dismiss, the Court must resolve
factual disputes in favor of the Plaintiff.  Guidry v. U.S. Tobacco
Co., Inc., 188 F.3d 619, 626 (5th Cir. 1999) (on a Rule 12(b)(2)
motion, conflicts in the evidence must be resolved in plaintiff's
favor for the purposes of determining whether plaintiff has made a
prima facie case for in personam jurisdiction); Lowrey v. Tex. A&M
Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (on a Rule 12(b)(6)
motion, the district court must construe the allegations in the
complaint favorably to the pleader and must accept as true all
well-pleaded facts in the complaint).

[3] Document No. 36 ¶ 31.

[4] *See* Document No. 52, ex. J.

3

owner of the Exceed MRP software; the software "may not be transferred to any other party"; and "the Software may not be modified, reverse engineered, or de-compiled in any manner."[5]

On August 19, 2010, INOX hired VCAN Technologies Pvt. Ltd. ("VCAN India") to develop new MRP software for CVA.[6] Kulkarni, as INOX Director and Chief Executive, signed the work order "by and between" INOX and VCAN India because INOX "intend[ed] to develop web based software to manage Material Resources Planning for their subsidiary M/s. CVA Inc., USA."[7] The agreement was made effective as of September 1, 2011 in a contract signed by Nitin Palkar for INOX in his capacity as "Project Manager (INOVA)."[8] Plaintiff claims that VCAN India, in concert with INOX, developed an MRP software program called "INOVA," and that INOVA is an infringing copy or derivative work of its copyrighted Exceed MRP software.[9] INOX regularly accesses the software which resides on CVA's Texas server.[10] Plaintiff also alleges that INOX, in concert with VCAN India and CVA, removed Plaintiff's copyright management information

---

[5] Document No. 36, ex. A.

[6] *See* Document No. 56, ex. D (Work Order).

[7] <u>Id.,</u> ex. D at D7, D1.

[8] Document No. 52, ex. A at A1-A4 (Sept. 1, 2011 VCAN-INOX Contract).

[9] Document No. 36 ¶¶ 198, 201.

[10] *See* Document No. 52, exs. B24 at 30:16-22; (Kulkarni Depo.); E4 at 67:13-19 (Carr Depo.).

embedded in the Exceed MRP Software code, and that Defendants then fraudulently placed their own indicia of ownership on the infringing INOVA software in violation of the Digital Millennium Copyright Act ("DMCA").[11]

Plaintiff alleges the following claims against INOX: copyright infringement in violation of 17 U.S.C. § 501 (Count 3); violations of the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. §§ 1202(a) (False Copyright Management) and 1202(b) (Removal of Copyright Information) (Counts 10 and 11); violation of the Lanham Act 15 U.S.C. § 1125 (False Advertising) (Count 12); unfair competition (Count 14); and tortious interference with contractual relations (Count 17); and a request for permanent injunction (Count 18).   INOX moves to dismiss these claims for lack of personal jurisdiction and for failure to state a claim (Document Nos. 38 and 39).[12]

---

[11] Document No. 36 ¶¶ 140-160.

[12] INOX moves to dismiss Plaintiff's claims against INOX.  INOX includes Plaintiff's breach of contract claim (Count 13) in this category, but Plaintiff clarifies in its Response that its breach of contract claim is against CVA only, not INOX.  *See* Document No. 44 at 17.  Plaintiff also states that it is willing to withdraw its unfair competition and tortious interference claims against INOX, without prejudice to refiling those claims pending further discovery.  Id.  The remainder of the counts in Plaintiff's First Amended Complaint contain claims against other Defendants, and are not considered on INOX's Motions to Dismiss.

## II.   Personal Jurisdiction[13]

### A.   Rule 12(b)(2) Legal Standard

A federal court may exercise personal jurisdiction over a nonresident defendant if:  (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) the exercise of such jurisdiction comports with due process under the United States Constitution.  *See* Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 871 (5th Cir. 1999). Because the Texas long-arm statute has been interpreted to extend as far as due process permits, the sole inquiry is whether the

---

[13] Plaintiff moves to strike the June 25, 2012, July 23, 2012, October 12, 2012, and November 12, 2012 declarations of Mr. Parag Kulkarni, contending that he has "consistently and repeatedly misrepresented key facts of this case to the Court."  Document No. 58 at 2.  INOX represents that Mr. Kulkarni's June 25 and July 23 declarations were superceded by his latter two declarations, and that INOX is not relying on the June 25 and July 23 declarations, which are therefore STRICKEN.  INOX has provided alternative interpretations for what Plaintiff alleges are misrepresentations in Mr. Kulkarni's October 12 and November 12 declarations, and Plaintiff has submitted evidence to refute much of what Mr. Kulkarni declares, from all of which it is evident that issues of fact are in dispute.  A motion to strike ordinarily must be denied when the challenge is over a disputed issue of fact.  *See* Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla., 306 F.2d 862, 868 (5th Cir. 1962).  Moreover, as observed below, when analyzing whether a defendant is subject to the personal jurisdiction of the Court, conflicts between the facts contained in the parties' affidavits and other documentation are construed in the plaintiff's favor.  *See* Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000).  Accordingly, Plaintiff's Motion to Strike the October 12 and November 12 Declarations of Parag Kulkarni is DENIED.

exercise of personal jurisdiction over a nonresident defendant comports with federal constitutional due process requirements. Id.

This due process inquiry focuses upon whether the nonresident defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945). Two types of personal jurisdiction are recognized: (1) specific and (2) general. Specific jurisdiction exists when the cause of action relates to or arises out of the defendant's contacts with the forum. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n.8 (1984). Specific jurisdiction is proper where the nonresident defendant has "'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King v. Rudzewicz, 105 S. Ct. 2174, 2182 (1985) (citations omitted).

Alternatively, general jurisdiction may be exercised over a defendant who has systematic and continuous contacts with the forum. See Helicopteros, 104 S. Ct. at 1872-73. "[T]he continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 230 (5th Cir. 2012) (quoting Int'l Shoe, 66 S. Ct. at 159); see also

7

Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2856 (2011) ("A corporation's 'continuous activity of some sorts within a state,' International Shoe instructed, 'is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'") (quotation omitted).

When an evidentiary hearing on the question of personal jurisdiction is not conducted, the party seeking to establish jurisdiction bears the burden of presenting a prima facie case of personal jurisdiction. See Alpine View Co. Ltd. v. Atlas Copco AB, 205 F.3d 208, 215 (5th Cir. 2000); Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 211 (5th Cir. 1999). Proof by a preponderance of the evidence is not required. Kelly v. Syria Shell Petro. Dev. B.V., 213 F.3d 841, 854 (5th Cir. 2000). A plaintiff may present a prima facie case by producing admissible evidence which, if believed, would suffice to establish the existence of personal jurisdiction. See WNS, Inc. v. Farrow, 884 F.2d 200, 203-04 (5th Cir. 1989). Uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits and other documentation must be construed in the plaintiff's favor. See Alpine View, 205 F.3d at 215. "If, however, 'there are conflicts between some of the facts alleged by the plaintiffs and those alleged by the defendants in their affidavits, such conflicts must be resolved in plaintiff(s') favor for the purposes of determining whether a prima facie case for in

personam jurisdiction has been established.'" <u>Guidry</u>, 188 F.3d at 626 (citations omitted).

B.   <u>Specific Jurisdiction</u>

1.   <u>Legal Standard</u>

The Fifth Circuit determines the constitutionality of specific jurisdiction for a nonresident defendant by applying a three-step analysis: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." <u>McFadin v. Gerber</u>, 587 F.3d 753, 759 (5th Cir. 2009) (citing <u>Nuovo Pignone, SpA v. STORMAN ASIA M/V</u>, 310 F.3d 374, 378 (5th Cir. 2002)).  "Once a plaintiff has established minimum contacts, the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." <u>Wien Air</u>, 195 F.3d at 215.

"[W]hether the minimum contacts are sufficient to justify subjection of the non-resident to suit in the forum is determined not on a mechanical and quantitative test, but rather under the particular facts upon the quality and nature of the activity with relation to the forum state." <u>Miss. Interstate Express, Inc. v.</u>

Transpo, Inc., 681 F.2d 1003, 1006 (5th Cir. 1982). "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Lewis v. Fresne, 252 F.3d 352, 358–59 (5th Cir. 2001); see also FCA Inv. Co. v. Baycorp Holdings, Ltd., 48 F. App'x 480, 2002 WL 31049442 at *3 (5th Cir. Aug. 29, 2002) (unpublished op.).

Copyright infringement is considered an intentional tort for purposes of the Court's jurisdictional analysis. See, e.g., Illustro Sys. Int'l, LLC v. Int'l Bus. Mach. Corp., No. Civ. A. 3:06-CV-1969, 2007 WL 1321825, at *8 (N.D. Tex. May 4, 2007) (Lindsay, J.) ("The court determines that copyright infringement is an intentional tort."); Isbell v. DM Records, Inc., No. Civ. A. 3:02-CV-1408-G, 2004 WL 1243153, at *10 (N.D. Tex. Jun. 4, 2004) ("The Calder 'effects' test applies to intentional business torts, including copyright infringement.") (collecting cases); Frees, Inc. v. McMillian, No. Civ. A. 05-1979, 2007 WL 2701161, at *1 (W.D. La. Sept. 7, 2007) ("Copyright infringement also sounds in tort."); see also Realsongs v. Gulf Broad. Corp., 824 F. Supp. 89, 91 (M.D. La. 1993) (denying summary judgment for defendants and stating that "[c]opyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable").

2.   <u>Analysis</u>

INOX claims that it does not transact business in Texas, has no place of business in Texas, does not employ Texas residents, and is "merely the parent company" of CVA.[14]   Plaintiff's evidence, however, shows that: (1) INOX directly hired and initially paid VCAN India to prepare INOVA, which Plaintiff contends is an infringing derivative work of its Exceed software, and to install such software "at CVA Inc. USA," whose server is located in Texas;[15] (2) INOX directly participated in the development of the INOVA software;[16] (3) INOX employee Nitin Palkar "coordinate[d] this activity to help ease the communication between VCAN and CVA";[17] (4) INOX regularly logs onto CVA's server located in Texas in order to use the Exceed MRP and INOVA software to view data, which Plaintiff alleges INOX has no license or permission to do;[18] and (5) INOX was given user names and passwords to access all of the modules and links of the Exceed MRP program, which was housed on a

---

[14] Document No. 38 at 2.

[15] *See* Document No. 52, ex. A1, A2; Document No. 56, ex. D; Document No. 52, ex. B24 at 30:16-22; (Kulkarni Depo.).

[16] *See* Document No. 56, ex. D (Work Order).

[17] *See* Document No. 52, ex. B27 at 19:12-17 (Kulkarni Depo.).

[18] Document No. 52, ex. B25 at 27:13-22; B26 at 28:4-8.

server in Texas.[19]  Further, Plaintiff alleges in its complaint that "Defendant INOX sells cryogenic vessels made and designed with the use of the INOVA Software."[20]

INOX contends that its actions of logging onto and viewing a software program located on a Texas server do not constitute infringement, citing Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121 (2d Cir. 2008).  In Cartoon Network, the Second Circuit reversed the district court's finding of infringement because the "copy" of digital work was not "fixed" within the meaning of the copyright statute, failing the duration requirement. Id. at 130.  In that case, the owner of copyrighted television content sued a cable television provider that allowed its customers to record shows for future viewing.  Id. at 124.  Cartoon Network held that loading a program into a form of Random Access Memory ("RAM")[21] did not result in copying in that circumstance, because the copyrighted content remained in the defendant's RAM less than 1.2 seconds before being overwritten with different content.  Id. at 129.

_____

[19] See Document No. 52, ex. D10 (email from Jeffrey Carr of CVA to Mr. Palkar of INOX).

[20] Document No. 36 ¶ 76.

[21] "To run a computer program, the data representing that program must be transferred from a data storage medium (such as a floppy disk or a hard drive) to a form of Random Access Memory ("RAM") where the data can be processed."  Id. at 128 n.1.

However, in <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, the Ninth Circuit held that "copying for purposes of copyright law occurs when a computer program is transferred from a permanent storage device to a computer's RAM." 991 F.2d 511, 518 (9th Cir. 1993), *cert. dism'd*, 114 S. Ct. 671 (1994). Other circuit courts have held that the loading of copyrighted software into RAM can create an infringing copy. *See, e.g.*, <u>Stenograph L.L.C. v. Bossard Assoc., Inc.</u>, 144 F.3d 96, 101-02 (D.C. Cir. 1998); <u>Quantum Sys. Integrators, Inc. v. Sprint Nextel Corp.</u>, 338 F. App'x 329, 336-337, 2009 WL 1931196, at *6 (4th Cir. Jul. 7, 2009) (unpublished op.). Moreover, at least one district court in the Fifth Circuit has cited <u>MAI Systems</u> for the proposition that "copying occurs when a computer program is transferred from a permanent storage device to a computer's random access memory." *See* <u>Playboy Enter., Inc. v. Webbworld, Inc.</u>, 991 F. Supp. 543, 551 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. Jan 08, 1999) (unpublished op.). Plaintiff presents evidence to show that INOX accesses the Exceed MRP and INOVA software such that copyrighted content is available long enough for an INOX employee to view and evaluate the data displayed thereon. At this stage of the proceedings, Plaintiff's allegations with supporting jurisdictional evidence are sufficient to sustain Plaintiff's prima facie case.[22]

---

[22] Plaintiff's jurisdictional evidence further shows that INOX, whether at the behest of CVA or on its own, contracted with VCAN to develop INOVA.  INOX may not avoid jurisdiction by claiming it was

Plaintiff's causes of action arise out of or relate to INOX's contacts with the forum.  As set forth above, Plaintiff has produced evidence that INOX knew that the Exceed and INOVA software were located on CVA's server in Texas[23] and that INOX regularly logged onto, accessed, and used both the Exceed software and the INOVA software.[24]  Numerous courts have exercised personal jurisdiction over nonresident defendants where the minimum contacts with the forum consisted of committing a tort through accessing a server located in the forum state.  *See, e.g.*, <u>Felland v. Clifton</u>, 682 F.3d 665, 676 (7th Cir. 2012) (finding the consideration of the location of the computer server to be appropriate in a determination of specific jurisdiction where the defendant knew that he was sending correspondence to forum residents); <u>MacDermid,</u>

---

a mere agent contracting with VCAN for CVA's benefit.  "[I]n an action in which the plaintiff is seeking to hold an agent individually liable for his tortious or fraudulent acts . . . an 'agent is personally liable for his own fraudulent or tortious acts, even when acting within the course and scope of his employment.'"  <u>Dagel v. Resident News, LLC</u>, Civ. A. No. 3:11-CV-663-L, 2012 WL 2068727, at *5 (N.D. Tex. Jun. 8, 2012) (slip op.) (quoting <u>Sanchez v. Mulvaney</u>, 274 S.W.3d 708, 712 (Tex. App.--San Antonio 2008, no pet.))).  Plaintiff alleges that INOX, in acting with VCAN to develop the INOVA software, removed Plaintiff's copyright management information embedded within the Exceed MRP code and applied its own fraudulent copyright notice and other indicia of ownership onto the INOVA software.

[23] *See* Document No. 52, ex. B24 at 30:16-22 (Kulkarni Depo.).

[24] *See, e.g.*, <u>id.</u>, ex. D at D1-D4, D10-D17 (email correspondence between INOX employees and CVA employees discussing how to access CVA's server and the login and password information for the Exceed and INOVA programs).

14

Inc. v. Deiter, ---F.3d ----, 2012 WL 6684580, at *3 (2d Cir. Dec, 26, 2012) (finding specific jurisdiction over a nonresident defendant where the defendant accessed a computer server in the forum state to commit a tort); CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1264-68 (6th Cir. 1996) (holding nonresident defendant who uploaded 32 master software files onto plaintiff's server in Ohio via the Internet was subject to jurisdiction in Ohio in trademark and unfair competition declaratory action); Watch Sys. LLC v. Sys. Design Solutions, Inc., Civ. A. No. 09-5821, 2009 WL 5217085, at *6 (E.D. La. Dec. 31, 2009) (Barbier, J.) (finding specific jurisdiction where a defendant breached plaintiff's server in Louisiana to commit a tort, and the effects of that tort were foreseeably felt in Louisiana); Abatix Corp. v. Capra, No. Civ. A. 2:07-CV-541, 2008 WL 4427285, *4 (E.D. Tex. Sept. 24, 2008) (Ward, J.) (finding the exercise of specific jurisdiction proper where nonresident defendants "directed their allegedly tortious act" at computer servers located within the forum); Verizon Online Servs., Inc. v. Ralsky, 203 F. Supp. 2d 601, 610 (E.D. Va. 2002) (nonresident defendant subject to jurisdiction in forum where it had sent millions of emails through plaintiff's server located in the forum); Bus. Info. Sys. v. Prof'l Governmental Research & Solutions, Inc., No. Civ. A. 1:02CV00017, 2002 WL 32747668, at *10-11 (W.D. Va. Oct. 10, 2002) (Williams, J.) (nonresident defendant subject to jurisdiction where it accessed plaintiff's server, which

was located in the forum state, and disseminated records contained thereon to its paid subscribers); Info. Techs. Int'l, Inc. v. ITI of N. Fla., Inc., No. 01 C 4668, 2001 WL 1516750, at *7 (N.D. Ill. Nov. 28, 2001) (prima facie case of personal jurisdiction where nonresident defendants "hack[ed] into [plaintiff's] computer system and chang[ed] the remittance address to redirect accounts receivable"). In sum, Plaintiff has made a prima facie case that its causes of action against INOX arise out of or relate to INOX's above-described purposeful contacts with Texas.

The burden therefore shifts to INOX to show that the Court's exercise of jurisdiction would be unfair. Wien Air, 195 F.3d at 215. In considering the fairness issue, the Court examines: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." Guidry, 188 F.3d at 630 (citations omitted). "To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." Wien Air, 195 F.3d at 215 (quoting Burger King, 105 S. Ct. at 2185).

INOX argues that Texas has no interest in this dispute and haling it into court in Texas is unfair because it is based in India. To the contrary, Texas has "a strong interest" in

16

protecting its citizens from copyright infringement and violations of the DMCA.  *See* <u>Sefton v. Jew</u>, 201 F. Supp. 2d 730, 742 (W.D. Tex. 2001).  The fact that INOX accessed Texas remotely through a Virtual Private Network ("VPN") using a computer in India does not diminish that interest.  Moreover, INOX has not shown that litigating this dispute in Texas would be materially more burdensome on it than would be the countervailing burden on Plaintiff and its principals, if required, to make repeated trips to India.  In fact, the record evidence shows that INOX's principals and employees have traveled several times to Texas to manage their subsidiary during just the past three years.[25]  In sum, INOX has not made a compelling case that this Court's exercise of jurisdiction over it would offend traditional notions of fair play and substantial justice.  Accordingly, INOX's motion to dismiss for lack of personal jurisdiction is denied.

### III.  <u>Rule 12(b)(6) Motion to Dismiss</u>

A.  <u>Legal Standard</u>

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or

---

[25] *See, e.g.*, <u>id.</u>, ex. D at D6-D9, D26 (emails indicating travel details for INOX employees to come to Texas).

admission, its task is inevitably a limited one. *See* <u>Scheuer v.</u> <u>Rhodes</u>, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. <u>Id.</u>

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* <u>Lowrey</u>, 117 F.3d at 247. To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." <u>Twombly</u>, 127 S. Ct. at 1964-65.

B.   <u>Discussion</u>

Defendant INOX's Rule 12(b)(6) motion boils down to whether Plaintiff has stated plausible claims against INOX for copyright infringement, violations of the DMCA, and false advertising under

the Lanham Act.[26]   INOX's central basis for seeking dismissal of
these claims rests on the principle that "American copyright law
does not apply to extraterritorial acts of infringement," citing,
*inter alia*, Subafilms, Ltd. v. MGM-Pathe Commc'ns Co., 24 F.3d
1088, 1098 (9th Cir. 1994); Palmer v. Braun, 376 F.3d 1254, 1258
(11th Cir. 2004); and Update Art, Inc. v. Modiin Pub., Ltd., 843
F.2d 67, 73 (2d Cir. 1988).[27]

Accepting the principle that American copyright law does
not apply to wholly extraterritorial acts of infringement, it
nonetheless does apply when at least part of an act of infringement
occurs in the United States.  *See, e.g.*, Palmer, 376 F.3d at 1258
(holding that the importation of infringing work into the United
States was "sufficient to support federal copyright jurisdiction");
Sheldon v. Metro-Goldwyn Pictures Corp., 106 F.2d 45, 52 (2d Cir.
1939) (Hand, J.), *aff'd*, 60 S. Ct. 681 (1940) (finding that profits
obtained from unauthorized copies of a copyrighted film shown
overseas, where the negatives were produced in America, "took the

---

[26] Plaintiff in its Amended Complaint alleges breach of
contract against Defendant CVA, but not against INOX, and hence
INOX's motion to dismiss a breach of contract claim is DENIED as
MOOT.  Moreover, INOX declares it is willing to withdraw its unfair
competition and tortious inference claims without prejudice to
refiling those claims, pending further discovery.  *See* Document No.
44 at 17 (Plaintiff's Response) (filed under seal).  Accordingly,
Plaintiff's unfair competition and tortious interference claims are
DISMISSED without prejudice.  Any motion for leave to refile these
claims in this cause must be timely filed in the overall context of
the development of the case.

[27] Document No. 39 at 5-6.

form of property whose situs was the United States" and therefore "our law seized upon them and imposed upon them a constructive trust"); *see also* <u>Yesh Music v. Lakewood Church</u>, No. 4:11-cv-03095, 2012 WL 524187, at *9 (S.D. Tex. Feb. 14, 2012) (Ellison, J.) ("[I]f, and to the extent, a part of an 'act' of infringement occurs within the United States, then, although such act is completed in a foreign jurisdiction, those parties who contributed to the act within the United States may be rendered liable under American copyright law." (citation omitted)); *compare* <u>Subafilms</u>, 24 F.3d 1088 (holding that no infringement took place where the copying of a copyrighted work occurred overseas and was merely authorized in the United States).

Plaintiff in its Response plainly asserts that CVA's server--the single server upon which Plaintiff's software was licensed to be loaded--was located in Texas, and that INOX logged onto CVA's Texas-based server in August 2010 and April 2011, to infringe Plaintiff's software.  In deciding a motion to dismiss for failure to state a claim, however, the court may look only to plaintiff's well-pleaded facts in the complaint.  <u>Lowrey</u>, 117 F.3d at 247.  Plaintiff's First Amended Complaint, unlike its Response to INOX's motion, does not allege INOX's conduct with regard to CVA's Texas-based server or make other straightforward factual allegations of INOX having engaged in at least some acts of infringement in the United States.  Because Plaintiff has amply

demonstrated a basis to allege such facts sufficient "to raise a right to relief [against INOX] above the speculative level," Twombly, 127 S. Ct. at 1964-65, the Court will permit Plaintiff within fourteen (14) days after the date of this Order to file a more definite statement in the form of a Second Amended Complaint. If Plaintiff fails to do so, its causes of action against Defendant INOX will be subject to dismissal for failure to state a claim upon which relief can be granted.   Fed. R. Civ. P. 12(b)(6).[28]

---

[28] INOX newly asserts in its Reply that Plaintiff's Lanham Act claim should be dismissed on the alternative grounds that Plaintiff did not sufficiently allege acts constituting the elements of that claim.   Document No. 50 at 7-9.   To state a claim for false advertising under the Lanham Act, Plaintiff must plead facts to show: "(1) a false or misleading statement of fact about a product; (2) a statement which actually deceived or had the capacity to deceive a substantial segment of potential consumers; (3) a material deception in that it was likely to influence a consumer's purchasing decision; (4) the product was in interstate commerce; and (5) plaintiff had been or was likely to have been injured as a result of the statement in issue." Pizza Hut Inc. v. Papa John's Int'l. Inc., 227 F.3d 489, 495 (5th Cir. 2000); Seven-Up Co. v. Coca-Cola Co., 86 F.3d 1379, 1383 n.3 (5th Cir. 1996); Healthpoint, Ltd. v. Ethex Corp., 273 F. Supp. 2d 817, 856 (W.D. Tex. 2001).

Plaintiff claims that INOX has "deceived both prospective and current customers regarding the origin of the Exceed MRP Software and the derivative work, the INOVA Software," and "[a]ny statements made regarding ownership of the INOVA software and/or Exceed MRP Software to prospective and/or current customers of INOX, CVA, and/or INOXCVA, are likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval of their goods by Plaintiff when none exists."   Plaintiff also alleges that it "has been injured as a result of INOX's statements."

Plaintiff's Complaint is rather vague as to whether it merely "asserts that [INOX] copied the ideas, concepts, structures, and sequences embodied in [Plaintiff's] copyrighted work," or whether it accuses INOX of "taking tangible copies of [Plaintiff's] software, removing its trademarks, and selling them as its own."

IV.   <u>Motion for Default Judgment</u>

Plaintiff moves for default judgment against VCAN Technologies, Inc. ("VCAN USA").   Citation and a copy of the First Amended Complaint were duly served on Defendant VCAN USA according to law and proof of service has remained on file for the time required by law.   Defendant VCAN USA has failed to appear or answer, either personally or through counsel of record, and has wholly made default.   Accordingly, Plaintiff's motion for default judgment is granted.

V.   <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendant INOX India Limited's Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 38) is DENIED; Defendant INOX India Limited's Motion to Dismiss for Failure to State a Claim (Document No. 39) is conditionally GRANTED, and Plaintiff's remaining claims against INOX for copyright infringement, violations of the DMCA, and false advertising under the Lanham Act will be DISMISSED unless Plaintiff Rhapsody Solutions, within fourteen (14) days after the date of this Order,

_____

If only the former, then Plaintiff's Lanham Act claim may fail as a matter of law.   *See* <u>General Universal Systems, Inc. v. Lee</u>, 379 F.3d 131, 149 (5th Cir. 2004).   At present, Plaintiff has not pled sufficient facts to support a claim under the Lanham Act.   If the Plaintiff repleads this claim, it should do so consistent with the Fifth Circuit precedent set forth in <u>General Universal Systems</u>, 379 F.3d 131.

files a more definite statement in the form of a Second Amended
Complaint.  It is further

ORDERED that Plaintiff Rhapsody Solutions's Motion for Default
Judgment as to Defendant VCAN Technologies, Inc. (Document No. 53)
is GRANTED, and Plaintiff is awarded a default judgment against
Defendant VCAN USA for liability on Plaintiff's claims against
Defendant VCAN USA as set forth in Plaintiff's First Amended
Complaint, and Plaintiff Rhapsody Solutions shall have and recover
of and from Defendant VCAN USA such sum of money or other relief as
may be proven upon the damages hearing in this cause.

The Clerk shall notify all parties and provide them with a
signed copy of this Order.

SIGNED at Houston, Texas, on this 5th day of March, 2013.


_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

23